ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **GM SECTEC CORP.**<br><br>Recurrente<br><br>v.<br><br>**GÉNESIS SECURITY SERVICES, INC.**<br><br>*Recurrido*<br><br>**JUNTA DE SUBASTAS DEL DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO**<br><br>Interventora | KLRA202500338 | **REVISIÓN** procedente de la Junta de Subastas del Departamento de Educación<br><br>Caso Núm:<br>**JR-25-120**<br><br>Subasta Núm.<br>**RFPDEPR-OC-2024-006**<br><br>Sobre: Solicitud de Revisión Administrativa sobre Adjudicación de Solicitud de Propuestas Selladas |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.[1]

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece ante nos GM Sectec, Corp. (en adelante, GM Sectec o parte recurrente) y solicita la revisión de la *Resolución* dictada el 23 de mayo de 2025, por la Junta Revisora de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico (en adelante, la Junta Revisora). Mediante la misma, la Junta Revisora revocó la *Resolución de Adjudicación Enmendada* de la Solicitud de Propuestas Selladas (RFP) Núm. DEPR-OC-2024-006 para la contratación de servicios de sistema de vigilancia electrónica, notificada el 28 de marzo de 2025, por la Junta de Subastas del Departamento de Educación de Puerto Rico (Junta de Subastas). Consiguientemente, decretó el rechazo global de las

_____

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025, sobre enmienda a la orden de designación de Paneles en el Tribunal de Apelaciones.

Número Identificador
SEN2025_____

ofertas presentadas y ordenó la celebración de un nuevo proceso de licitación pública para procurar los servicios objeto del RFP.

Por los fundamentos que expresaremos a continuación, se confirma la decisión recurrida.

**I.**

Según surge del expediente, el 2 de octubre de 2024, el Departamento de Educación de Puerto Rico y la Junta de Subastas emitió la solicitud de propuestas selladas de referencia, para la contratación de servicios de sistema de vigilancia electrónica. En lo pertinente, la Junta de Subastas mencionó, en la Sección 4.4, la **posibilidad de rechazar cualquier o todas las propuestas presentadas para un RFP, si, entre otras cosas, los proponentes no cumplían con algunos de los requisitos, especificaciones o condiciones estipuladas**. (Énfasis nuestro).

En la Sección 5.8, la Junta de Subastas expresó que toda propuesta con respecto al RFP Núm. DEPR-OC-2024-006 requería una **fianza de licitación (*Bid Bond*)** equivalente al 10% del precio total de la oferta presentada por el licitador. Destacó que **el incumplimiento con este requisito conllevaría el rechazo de la propuesta o la cancelación de la adjudicación**. Asimismo, explicó que la fianza se presentaría simultáneamente con la propuesta sometida por el proponente personalmente y que en caso de que no se presente el documento o instrumento acreditativo de la fianza en original y firmada sería descalificado. (Énfasis nuestro).

De otra parte, en el Anejo IV del RFP, la Junta de Subastas dispuso los criterios de evaluación de la primera fase. En esta se examinarían las propuestas para verificar que cumplieran con los siguientes términos y condiciones insubsanables o compulsorios:

1. El proponente participó en la reunión pre-propuesta compulsoria.

2. El proponente participó en las inspecciones oculares "site visit" compulsorias.

3. Fianza de Licitación ("Bid Bond") en cumplimiento con el inciso a de la Sección 5.8.

4. Anejo I - Certificación de Propuesta del Licitador o Proponente completada en todas sus partes y firmada por un representante del proponente autorizado en el RUL.

5. Propuesta presentada en cumplimiento con las fechas y lo dispuesto en este Pliego.

6. La entidad es elegible para los servicios solicitados en el RFP.

7. Se incluye la información, requisitos y documentos obligatorios o insubsanables.

La Junta de Subastas especificó que, si del resultado de la evaluación surgía que **el proponente incumplió en uno o más de los mencionados criterios, su propuesta sería rechazada de plano, sin ulteriores procedimientos**. Al mismo tiempo, expuso que las propuestas que cumplieran con todos los criterios allí establecidos continuarían en el proceso de evaluación. (Énfasis nuestro).

Por igual, en el Anejo V, Acápite II (a) y (b), la solicitud de propuestas detalló que, para la **evaluación de la capacidad financiera, el proponente debía presentar los estados financieros auditados de los últimos cinco (5) años**. Además, se expuso que la Junta de Subastas y el Departamento de Educación se reservaban el derecho de solicitar información financiera adicional durante el proceso de mejor y final oferta. (Énfasis nuestro).

Luego de varias inspecciones oculares en las facilidades escolares participantes, y tras varios trámites, el 4 de noviembre de 2024, la Junta de Subastas recibió dos (2) propuestas de las compañías GM Sectec y Génesis Security Services (Génesis Security). La Oficina del Comisionado de Seguridad del Departamento de Educación convocó al Comité de Evaluación (Comité), el cual llevó a cabo una apreciación de las ofertas. La

Junta de Subastas realizó una inspección ocular de las facilidades de uno de los proponentes para verificar los centros de monitoreos. El 17 de diciembre de 2024, 10 y 15 de enero de 2025, la Junta de Subastas solicitó a GM Sectec aclaraciones sobre ciertos puntos de su propuesta como parte del proceso de selección. También se llevó a cabo una reunión, en la cual se discutieron y aclararon ciertas dudas con respecto al RFP.

El 30 de enero de 2025, el Comité remitió su recomendación final a la Junta de Subastas. Dicho ente tomó en consideración los siguientes criterios establecidos en el RFP: experiencia y desempeño pasado; capacidad financiera; capacidad técnica; término de entrega y garantía, y precio.

El 27 de marzo de 2025, la Junta de Subastas dictó una *Resolución de Adjudicación*, por medio de la cual adjudicó la *buena pro* a GM Sectec.[2] La evaluación de las propuestas realizada por la Junta de Subastas se dividió en dos (2) fases. En la primera, examinó las propuestas para determinar si los proponentes cumplieron con los términos y condiciones insubsanables (entrega de documentos). Culminada esta fase, la Junta de Subastas determinó que Génesis Security incumplió, al no incluir con su oferta la fianza de licitación. Por ende, esta entidad fue descalificada del proceso de evaluación. A su vez, determinó que GM Sectec cumplió con todos los términos y condiciones.

Durante la segunda fase, la Junta de Subastas evaluó a GM Sectec de forma integrada y tomó como base los siguientes aspectos: experiencia y desempeño; capacidad financiera; capacidad técnica; término de entrega y garantía; propuesta de precios y cuál representaba el mejor valor para el Gobierno de Puerto Rico.

---

[2] Al día siguiente emitió una resolución enmendada.

Con respecto a la capacidad financiera, la Junta de Subastas expresó que, para asignar la puntuación disponible, justipreció la facultad de GM Sectec para manejar un proyecto de la envergadura del RFP concernido, lo cual incluyó un análisis de la liquidez de las empresas, la rentabilidad de sus operaciones, los niveles de endeudamiento y la eficiencia operativa. Así, determinó que, a través de los años, GM Sectec ha sido consistente económicamente y destacó que ha sido financieramente sólida y rentable.

Luego de analizar las propuestas de los licitadores, la Junta de Subastas concluyó que el proponente agraciado era GM Sectec y dispuso lo siguiente:

> [L]a sección 4.5 del pliego del RFP ante nos dispone que: "[la Junta de Subastas adjudicará la "buena pro" al o los proponentes responsivos cuyas propuestas representan el mejor valor para el Gobierno de Puerto Rico. La Junta de Subastas se reserva el derecho de adjudicar la "buena pro" a uno o más Proponentes.
>
> Luego de realizar la evaluación de las propuestas recibidas para el RFP Núm. PRDE-OC-2024-006, la Junta de Subastas en su reunión celebrada el 27 de marzo de 2025, determina que responde a los mejores intereses del Gobierno de Puerto Rico la propuesta presentada por GM Sectec, Corp., con una puntuación final asignada por el Comité Evaluador de 97.39 puntos. Los totales para el término de 5 años de contrato, para 12 ó 24 horas de servicio son $122,547,161.76 ó $123,613,364.76, respectivamente.
>
> El Proponente aquí mencionado cumple con las necesidades del Estado, así como con los requerimientos especiales, las especificaciones y las disposiciones que esta Junta de Subastas tomó en consideración para adjudicar la *buena pro* del RFP Núm. PRDE-OC-2024-006.

Por estar en desacuerdo, Génesis Security presentó una *Solicitud Revisión* ante la Junta Revisora de la Administración de Servicios Generales (ASG). En su escrito, alegó esencialmente que el proceso de subasta de referencia estuvo viciado de serias deficiencias, tanto en el aspecto procesal, como en el sustantivo, que justificaban su anulación y la celebración de un nuevo proceso. Esgrimió que las irregularidades del proceso

constituyeron en que: (1) el postor agraciado, GM Sectec, incumplió con someter los últimos cinco (5) estados financieros auditados; (2) GM Sectec presentó una propuesta utilizando la licencia de una subsidiaria, en violación a la Sección 3.3 del RFP; (3) GM Sectec incumplió con poseer una licencia de agencia de seguridad; (4) GM Sectec realizó cambios sustanciales luego de presentada la propuesta sin darle la oportunidad a otros proponentes y la Junta de Subastas tuvo un trato arbitrario, caprichoso, irrazonable y desigual entre proponentes. Por tanto, Génesis Security requirió a la Junta Revisora de la ASG que revocara la determinación de la Junta de Subastas; rechazara globalmente el RFP y ordenara que se realizara un nuevo proceso.

GM Sectec se opuso a la solicitud de revisión administrativa interpuesta por Génesis Security. En esencia, adujo que el proceso de subasta se efectuó con transparencia, rigurosidad y estricta sujeción a los principios rectores de la contratación pública. Añadió que el récord mostraba un procedimiento competitivo, justo y conforme al marco legal y reglamentario vigente. Por tanto, solicitó a la Junta Revisora de la ASG que no acogiera el petitorio de Génesis Security por ser contrario al estado de derecho; confirmara la determinación de la Junta de Subastas a favor de su propuesta y ordenara la imposición de costas y honorarios por temeridad.[3]

Por su parte, el Departamento de Educación incoó una *Moción de Intervención y en Oposición a Solicitud de Revisión Administrativa (RFP-DEPR-OC-2024-006).* En síntesis, sostuvo que la decisión de la Junta de Subastas fue conforme a derecho y debía sostenerse. Además, argumentó que Génesis Security carecía de legitimación activa para impugnar la adjudicación final, al haber sido descalificada en la primera fase del procedimiento por

---

[3] Génesis Security presentó una *Réplica* y GM Sectec una *Dúplica a "Réplica".*

incumplir con un requisito esencial del RFP. Apuntó que dicha entidad no participó en la evaluación sustantiva ni en la etapa de adjudicación del contrato. Génesis Security se opuso a la referida solicitud de intervención.

Evaluados los argumentos de las partes, la Junta Revisora de la ASG emitió el pronunciamiento recurrido. Según adelantamos, este dictamen revocó la *Resolución de Adjudicación Enmendada* emitida por la Junta de Subastas, decretó el rechazo global de las ofertas presentadas y ordenó la celebración de un nuevo proceso de licitación pública para procurar los servicios objeto del RFP de epígrafe.

En su discusión, la Junta Revisora de la ASG atendió, como cuestión de umbral, el planteamiento levantado por el Departamento de Educación sobre la falta de legitimación activa de Génesis Security. Al respecto, la Junta Revisora expresó no estar de acuerdo con la postura de la agencia. Expuso que el reclamo de Génesis Security no era abstracto ni hipotético y sus alegaciones demostraron que la decisión de la Junta de Subastas tuvo el efecto real y adverso hacia dicha parte. Ello, al rechazar su oferta por incumplir con uno de los requisitos del pliego, pero aceptar la de GM Sectec, a pesar de que esta compañía tampoco incluyó todos los documentos mínimos requeridos e incluso permitirle subsanar dicho error posteriormente. Así las cosas, la Junta Revisora de la ASG concluyó que Génesis Security ostentaba legitimación activa para cuestionar la determinación de la Junta de Subastas en su totalidad.

En cuanto a las alegaciones sobre el incumplimiento de GM Sectec con los requisitos del Pliego del RFP, particularmente la entrega de los estados financieros auditados, la Junta Revisora enunció lo siguiente:

De lo anterior surge claramente que el propio DE reconoció en su carta de 24 de febrero de 2025, que GM Sectec no cumplió con los requisitos del RFP y no entregó Estados Financieros Auditados para los últimos cinco años (5), conforme requerido por el Pliego. En respuesta a dicho requerimiento, se le permitió a GM Sectec someter un estado financiero auditado para los años 2018 y 2019, dado que sus estados financieros son de años comparativos. En su escrito ante esta Junta Revisora, el DE es silente en cuanto a este incumplimiento por parte de GM Sectec, o las razones que motivaron a la Junta de Subastas a solicitar a dicha parte subsanar el mismo, en contra de las instrucciones establecidas en el propio RFP, y en la norma establecida en la jurisprudencia aplicable.

[...]

Así las cosas, el requerimiento del DE de 24 de febrero de 2025, para que GM subsanara su omisión de presentar Estados Financieros Auditados para los últimos cinco (5) años, luego de haber ocurrido la apertura de ofertas, es una actuación improcedente en derecho, y que constituyó un abuso de discreción por parte de la Junta de Subastas. Las solicitudes de aclaraciones de BAFO no pueden ser utilizadas para subsanar errores con el propósito de cumplir con los requisitos mínimos de un RFP. El error cometido por GM Sectec al no entregar todos los Estados Financieros Auditados requeridos, no era subsanable, y debió conllevar el rechazo de su propuesta de conformidad con el Pliego del RFP y la normativa aplicable.

Ante la inobservancia de ambos proponentes con los requisitos mínimos e insubsanables del Pliego del RFP, la Junta Revisora de la ASG decretó el rechazo global de las ofertas.

Inconforme, GM Sectec acude ante nos mediante el presente recurso de revisión judicial. En este señala los siguientes errores:

La Junta Revisora incidió al reconocerle a Génesis-proponente descalificado del RFP por no presentar la fianza de licitación, y por consiguiente, incumplir un requisito insubsanable- legitimación activa para impugnar la adjudicación del RFP, cuando debió desestimar el recurso de revisión administrativa.

La Junta Revisora cometió un craso error de derecho al revocar la adjudicación de la Solicitud de Propuestas, hecha por la Junta de Subastas del Departamento de Educación a favor de GM, ya que, contrario a su razonamiento, GM no incumplió ningún requisito insubsanable.

El 11 de julio de 2025, Génesis Security instó su *Alegato en Oposición a Revisión Judicial.*

Con el beneficio de ambas comparecencias, procedemos a resolver.

**II.**

**A.**

En nuestra jurisdicción, la contratación gubernamental de todo tipo de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *Sonnell Transit Service, LLC v. Junta de Subastas del Municipio Autónomo de Toa Baja; Municipio Autónomo de Toa Baja*, 2025 TSPR 85, 216 DPR ___; *Mun. Aguada v. W Const. y Recovery Finance*, 214 DPR 432 (2024); *St. James Sec. v. AEE*, 213 DPR 366, 377 (2023)[4].

La subasta tradicional y el requerimiento de propuestas (*Request for Proposal o RFP*) son métodos mediante los cuales, tanto el gobierno central, como el municipal, adquieren bienes y servicios para así proteger el erario y garantizar que se realicen sus funciones administrativas responsablemente. *St. James Sec. v. AEE*, supra*; R&B Power v. ELA*, 170 DPR 606, 621 (2007).[5] A través de ambos mecanismos, se procuran conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009). En la medida que haya pureza en estos procedimientos, los entes estatales y municipales promoverán la libre competencia entre los

---

[4] Citando a *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023) y otros.

[5] Un requerimiento de propuestas "participa de características adjudicativas de la misma forma que la subasta tradicional". *R&B Power v. ELA*, supra, pág. 624. Ahora bien, debido a su naturaleza informal y flexible, y la erogación de fondos públicos que implica, es importante que su uso no se convierta en la norma como un escape a la competencia secreta de la subasta tradicional. *Íd.*, pág. 625. El *RFP* es comúnmente utilizado cuando se trata de bienes o servicios especializados que involucran aspectos altamente complejos o cuando existen escasos competidores cualificados. *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 674 (2018); *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 345 (2016). Nuestra jurisprudencia ha destacado que del *RFP* deben surgir "los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta". *Íd.*, pág. 346.

postores. *Íd.* Véase, además, *De Jesús González v. A.C.*, 148 DPR 255, 267-268 (1999).

El *Request for Proposal* se diferencia de la subasta habitual por ser un procedimiento excepcional, informal y flexible que permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios. *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 531-532 (2019).[6]

En nuestro ordenamiento jurídico es norma reiterada el conferirles a los organismos gubernamentales discreción a la hora de adjudicar subastas. *Mun. Aguada v. W Const. y Recovery Finance,* supra. Claro está, "siempre que se ejerza razonablemente y para fines legítimos del organismo o del interés público". *Perfect Cleaning v. Cardiovascular,* 172 DPR 139, 148 (2007). Por igual, nuestro Tribunal Supremo estableció en *CD Builders v. Mun. Las Piedras,* supra, pág. 345, que la anulación arbitraria de una subasta formal válidamente celebrada derrota los objetivos de transparencia, competencia efectiva y honestidad en la adquisición de bienes y servicios.

Ahora bien, es importante destacar que no se le puede adjudicar una subasta a un postor que quebrantó las exigencias establecidas en el pliego de especificaciones o que no cumplió con las disposiciones estatutarias esenciales para participar válidamente del proceso. Ello, ciertamente, violaría el orden público. Véase, *Sonnell Transit Service, LLC v. Junta de Subastas*

---

[6] Es por todos conocido que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración, de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. *CD Builders v. Mun. Las Piedras*, supra, pág. 349. Ello, toda vez que, en el ejercicio de sus facultades y su *expertise*, a las agencias "se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general". *Íd.* Como consecuencia, los tribunales no debemos intervenir con la adjudicación de una subasta o el rechazo de una propuesta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionalidad. *Íd.*

*del Municipio Autónomo de Toa Baja; Municipio Autónomo de Toa Baja*, supra, citando a *CD Builders v. Mun. Las Piedras*, supra, págs. 346-349.

**B.**

La Ley Núm. 73-2019, según enmendada, conocida como *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, adoptó, como política pública del Gobierno de Puerto Rico, la centralización de los procesos de compras gubernamentales de bienes, obras y servicios, para lograr mayores ahorros fiscales y la transparencia en la gestión gubernamental. Art. 2 de la Ley Núm. 73-2019, 3 LPRA sec. 9831a.

Cónsono con lo anterior, se delegó a la Administración de Servicios Generales (ASG) la responsabilidad de implantar dicha política pública y de coordinar y dirigir el proceso de adquisición de bienes y servicios, así como la contratación de servicios del Gobierno de Puerto Rico. *PVH Motor, LLC v. Junta de Subastas de la Administración de Servicios Generales*, 209 DPR 122 (2022). Además, la referida Ley dispone que el Administrador de la ASG establecerá mediante Reglamento los procesos que han de llevarse a cabo para cada método de licitación. Art. 32 de la Ley Núm. 73-2019, 3 LPRA sec. 9834h. Como parte de sus disposiciones, la Ley Núm. 73-2019, *supra*, estableció la Junta Revisora de Subastas adscrita a la ASG. Véase, 3 LPRA sec. 9837 y 3 LPRA sec. 9837d(a).

Asimismo, el Art. 63 de la Ley Núm. 73-2019 dispone que los procedimientos de adjudicación ante la Junta de Subastas de la ASG y los procedimientos de revisión ante la Junta Revisora de Subastas se regirán por los procedimientos establecidos en esta Ley, y por cualquier disposición de la Ley Núm. 38-2017, según

enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*. 3 LPRA sec. 9838.

La Junta Revisora de Subastas está facultada para revisar cualquier impugnación de las determinaciones o adjudicaciones hechas por la Administración Auxiliar del Área de Adquisiciones, por la Junta de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico o por las Juntas de Subastas de las Entidades Exentas. Artículo 55 de la Ley Núm. 73-2019, 3 LPRA sec. 9837.

Además, la Junta Revisora podrá efectuar un análisis independiente y propio de los hechos, aspectos técnicos, y los demás asuntos contenidos en el expediente de la subasta o el requerimiento en cuestión. También podrá revisar de forma independiente y autónoma las determinaciones de hecho y conclusiones de la Junta de Subastas de la que se origina la solicitud de revisión, siendo las mismas revisables en todos sus aspectos. Artículo 66 de la Ley Núm. 73-2019, 3 LPRA sec. 9838c.

Igualmente, el *Reglamento Uniforme de Compras y Subastas de Bienes, obras y Servicios no Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico*, Reglamento Núm. 9230 de 18 de noviembre de 2020 (Reglamento Núm. 9230), instituye los procesos a seguir para la adquisición de bienes, obras y servicios no profesionales en el Gobierno de Puerto Rico.

En particular, el Tribunal Supremo de Puerto Rico foro ha establecido que "una agencia tiene el derecho de revocar la adjudicación de la subasta antes de que se formalice el contrato correspondiente …". *Cordero Vélez v. Mun. De Guánica*, 170 DPR 237, 248 (2007), citando a *Justiniano v. E.L.A.*, 100 DPR 334, 340 (1971).

**C.**

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE*, 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[7]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[8] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también,

---

[7] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[8] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

*Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez v. Consejo de Titulares,* supra, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez v. Consejo de Titulares,* supra, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633 (2024); *García Reyes v. Cruz Auto*

*Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**III.**

En su primer señalamiento de error, la parte recurrente aduce que la Junta Revisora de la ASG actuó contrario a derecho al reconocerle a Génesis Security potestad para impugnar la adjudicación de un proceso de RFP en el cual no participó por su propia negligencia. Por consiguiente, nos solicita que revoquemos la determinación de la Junta Revisora, que a su vez revocó la *Resolución de Adjudicación Enmendada* emitida por la Junta de Subastas del Departamento de Educación.

En armonía con lo anterior, la principal contención de la parte recurrente es que Génesis Security no ostentaba legitimación activa para presentar una revisión administrativa ante la Junta Revisora, ello al ser descalificado por la Junta de Subastas del Departamento de Educación cuando no presentó la fianza de licitación requerida. Insiste en que la Junta Revisora realizó un análisis deficiente e incompleto al decidir que Génesis Security tenía *standing* para cuestionar la determinación de la Junta de Subastas del Departamento de Educación en su totalidad. Resalta que el daño sufrido, si alguno, por el proponente descalificado fue autoinfligido y fue por esa razón que la agencia evaluó única y exclusivamente la propuesta que resultó agraciada. Subraya que, al Génesis Security no tener derecho a impugnar la adjudicación del RFP emitida en un proceso del cual no participó, lo único que podría tener es la posibilidad de cuestionar la decisión de descalificación de la Junta de Subastas, lo cual tampoco hizo.

En su segundo señalamiento de error, la parte recurrente alega que la Junta Revisora se equivocó al determinar que procedía

rechazar su oferta ante la falta de un estado financiero. Esgrime que, distinto a la fianza de licitación, en ninguna parte del RFP relacionado a los estados financieros se cataloga dicho requisito como uno no insubsanable. Entiende que, si en la fianza de licitación se dispuso expresamente que era un requisito insubsanable, de haber sido el mismo caso con los estados financieros, el RFP así lo hubiese señalado.

Asimismo, la parte recurrente argumenta que la propia Junta de Subastas reconoció que, en el BAFO, se podía presentar y considerar información financiera, aunque no se hubiera presentado inicialmente con la propuesta. Añade que el Reglamento Núm. 9230 reconoce y autoriza a la Junta de Subastas orientar a un licitador de la existencia de cualquier deficiencia que tenga su propuesta de suerte que tenga la oportunidad de satisfacer los requisitos. Ello, siempre y cuando no se haya catalogado en el RFP como un requisito insubsanable.

Analizado ponderadamente el expediente, los argumentos de las partes y el derecho aplicable, colegimos que procede confirmar la decisión impugnada. Veamos.

En la presente causa, la Junta Revisora determinó que la parte recurrente incumplió con los requisitos mínimos e insubsanables del RFP. Ante ello, decretó un rechazo global de las ofertas y ordenó a la Junta de Subastas del Departamento de Educación llevar a cabo un nuevo proceso de licitación pública. Colegimos que dicha decisión es razonable.

Según expuesto, la Sección 4.4 de la solicitud de propuestas estableció claramente que la Junta de Subastas podía rechazar cualquier o todas las propuestas presentadas, si, entre otras cosas, los proponentes contravenían algunos de los requisitos, especificaciones o condiciones estipuladas. Además, en los Anejos IV y V de la solicitud de propuestas se expuso que, si un

proponente incumplía con uno (1) o más de los criterios establecidos, su propuesta sería rechazada de plano. Por consiguiente, al no incluirse en la propuesta de la parte recurrente todos los estados financieros auditados correspondientes a los últimos cinco (5) años, su propuesta se tornó deficiente y la Junta de Subastas del Departamento de Educación debió descalificarla del proceso de evaluación.

En suma, revisadas las conclusiones de derecho de la Junta Revisora en todos sus aspectos, colegimos que la parte recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que estas merecen. La decisión de la agencia fue razonable y se dictó bajo el marco doctrinal adecuado. Los errores señalados por la parte recurrente no se cometieron.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* impugnada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones